O’Neall, J.
In this case, I propose to discuss the single question, how far the testator’s estate, in the hands of the complainant, is liable for the debts contracted by Gabriel Capers, the executor.
By operation of law, all the personal estate of the testator is vested in his executor ; and this legal right would, at law, necessa *161 rily subject it to bis entire control and disposition. Before the act of 1824, he could even sell it without the order of the ordinary, (vide Acts of 1824, p. 24.) But in equity he is the trustee for the legatees ; and in that character he is bound so to manage the estate, that his ces. tuys quetrust shall sustain no injury from his neglect. As a general rule, I would say, that he should take as much care of it, as a prudent man would of his own. This general rule still leaves a great deal to the discretion of the executor, in the management of an estate committed to his care ; but that discretion is not entirely arbitrary, for it may be fairly deduced, as a consequence of the general rule, already laid down, that the expenditures for current expenses should not, unless in cases of unavoidable necessity, exceed the current income. This inference, from a general principle has, by repeated adjudications of this Court, been established as a fixed rule, by which executors, and trustees, should regulate their trusts. M’Dowell v. Caldwell, 2 M’C. Ch. 58; Teague v. Dendy, Ib. 211; Boggs v. Reid, at Columbia, May, 1829; and Smith and Brown v. Killingsworth, MS.
The income being the fund for expenses, the executor, in his disposition of it, ought to exercise a sound and honest discretion. If his disbursements from it have been made prudently, they will al. ways be supported ; if made extravagantly, or for purposes not necessary, they would be disallowed. These rules relate to the account between the trustee and cesluys que trust; and they necessarily suppose, that he has either paid out of the funds of the trust, or substituted his own credit in lieu of them. Persons dealing with the executor can therefore have no right to look to the estate for remuneration, except in an extraordinary case, and that I shall have occasion more particularly to designate hereafter. In Boggs v. Reid, the learned Judge, who delivered the opinion of the Court, distinctly affirms this position, and says, “ they are the creditors of the trustee, and not of the estate.” In Smith and Brown v. Killmgsworth, another equally able and learned Judge says, “ the general rule, that a trustee cannot bind the cestuy que trust, or create a bur-then on the trust estate, is so familiar as almost to have become an axiom.” In addition to what has already been said, and to these decisive authorities, a few words will demonstrate both the reason and justice of the rule, that, in general, the creditor of a trustee has no right to resort to the trust estate for the payment of his debt.
Both in law, and in equity, every contract, to be binding, must be between parties able to contract, and actually contracting, on a good consideration. As between the trustee and his creditor, all these *162 essential parts of a contract do exist; but as between the cestuy que trust and the creditor, none of them can be found. They are not only n<lt parties, but are frequently legally incapable from infancy, or coverture, to become so: and between them and the creditor, there is no actual privity of contract, nor is there any legal, or implied privity ; for their funds, for the purchase of the thing contracted to bé bought, are in the hands of the trustee. When he pays it, and puts it to their use, they have paid Aim for it; and hence no implication can be raised, that they agree, in consideration of receiving the thing bought, to pay the creditor of the trustee for it. This, however, it may be said, is rather technical reasoning, than the application of equal justiee, which is said to be equity. If it is technical reasoning, it is reasoning based upon the principles of the law, which I am called upon to administer, and not my own notion of abstract justice. I am, however, perfectly willing to test the rule on the principles of equal justice. The trustee has the right'to receive, audif necessary (o expend the income; and if the creditor looks beyond the trustee, when he makes the contract, it is to this fund alone he looks for payment. He knows, that at the end of the year it will be in the trustee’s hands, and if he does not take the necessary steps to procure payment, it is his own fault, and there is no injustice done him. But if the trustee were allowed to bind the trust estate, the effect might be ruinous to the cestuy que trust; and in thus seeking to do justice to the careful, and prudent man of business, we might carry irremediable injury, and ruin, into the very cradles of infancy. With such a security before him, a creditor might be willing to extend credit to the trustee from year to year, until the whole capital of the trust would not more than suffice to pay it; and in the mean time the trustee may have re. ceived, and squandered, the income, and his insolvency leave to his cesluy que trust not even the consolation of hope. The effect of the rule, when applied, will prevent these consequences, and even afford security to the creditor. If the trustee is not punctual, and prudent, he will be compelled to pay as he buys ; and if he is both prudent, and punctual, the creditor will hardly give him an opportunity of forfeiting his credit, by tempting him with indulgence to speculate on the funds of another. The annual bill will generally wait promptly on the punctual trustee.
I have said that an extraordinary case may exist, in which the creditor might be permitted to be paid out of the trust estate. It is necessary now to designate that case as well as we can. As a general guide, it may be laid down, that whenever the trustee, if hfs *163 bad paid the debt out of his own funds, would be in advance to the trust estate, and would be intitled to be reimbursed out of it, his creditor may, if the trustee is insolvent, be allowed to take his place, and be paid out of the estate, to the same extent. This constitutes, however, the only exception to the general rule, which we are prepared to recognize.
The case before us, shews the necessity of rigidly adhering to the rule, and allowing no other'exception to be made to it, than the one which I have stated. The executor, Gabriel Capers, had the management of the estate, consisting of a valuable tract of land in Sumter district, and a gang of seventy negroes, from 1810, to 1827. During this time, the family of the testator, to be provided for by his executor, consisted of three children. From his returns he appears to have received in income, over and above his payments, $4,831.53, exclusive of interest; and notwithstanding this fund Was in his hands, he contracted, and left unpaid, the debts to John Humphrey, J. K.-Douglass, and William Mayrant, amounting to-get her, exclusive of interest, to $1,748.82. He is now insolvent,, and has abandoned his trust, and left the State ; and these creditors now seek to make the income of the estate, realized since he abandoned his trust, liable for their debts. In common justice have they any claim to such relief? The cestuys que trust have already lost, by the mismanagement of their trustee, upwards of $10u0; and is nearly a half more to be added to that loss ? And for what ? Is it merely because their trustee was imprudent, and unfaithful; and that they were minors, incapable of guarding against the consequences of his misconduct, while the creditors were more careful, prudent, and vigilant, in, and of, their own interests? The answer never can be, that under these circumstances the infant must suffer, in order that the creditor may be indemnified. If loss must' fall any where, let it fall on those, who might have guarded against the mischief, but who neglected to do so.
It is however contended, that the decree of the Court of Equity, in favor^of Humphrey, and of Douglass, makes the estate, in the hands of the complainant, liable for the payment of their demands. The decree is in the usual form, ‘‘ that the executor, Gabriel Capers, do, out of the estate of the testator,” pay these debts. This is a judgment against the fund properly applicable to the payment of the debts; and that fund being in the- hands of the executor, he alone is liable under the decree. It may be enforced against him ; but if he were now in the possession of the whole estate, and Humphrey, or Dougiass, were proceeding to enforce their decree, by an *164 execution against, and a sale under it, of the testator’s estafe, I ap. tiii ti .. . . ... prenend (hat the cestuys que trust would, on an application by bill, shewing that the debts were contracted by the executor, and that the income in his hands was sufficient to pay them, be intilled to . 1 J an injunction. Here the creditors have become the actors. They come in under a bill for the administration of the assets of the es. tale, and undertake to set up their demands, as a charge against the estate, now out of Capers’ hands ; but before they can be allowed to do this, they must shew that Capers had not assets of the estate in his hands to pay the debts, and that the debts due to them were necessarily contracted for the benefit of the estate. This cannot be done, and it follows that the estate cannot be so charged.
The debt due to Mr. Mayrant, it is contended, rests upon a still higher ground. It is said that the estate has had the benefit of this contract with him, and ought therefore to be bound for it. But it is worthy of remark, that whatever may have been the income derived from the use of Mr. Mayrant’s plantation, and driver, the cestuys que trust did not receive any part of it. The whole was received by Capers, and he ought, out of it, to have paid Mr. Mayrant. Like the rest of his contracts, this debt ought to have been paid out of the current income. But 1 am by no means satisfied, that the rent and hire of Mr. Mayrant’s plantation, and driver, were necessary for the estate. In relation to that part of the case, I am very much disposed to concur with the commissioner in the opinion, that it was a mere speculation of the executor, and not required by any paramount necessity, or even expediency. But the observations made on the other parts of the case, dispose of Mr. Mayranl’s claim without resorting to any inquiry on this point.
So much of the Chancellor’s decree, as charges the income of the estate, since it was abandoned by Capers, with the payment of the debts due to John Humphrey, J. K. Douglass, and William Mayrant, is clearly erroneous; and it is therefore ordered and decreed, that the decree of the Chancellor, in these respects, be reversed.
Johnson, J., and Evans, J., sitting for Harper, J., absent from indisposition, concurred.

Decree modified.